

U.S. Department of Justice

United States Attorney
District of Maryland

Mary Setzer
Assistant United States Attorney
Mary.Setzer@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4803
MAIN: 410-209-4800
FAX: 410-962-3091

February 11, 2020

Katherine Newberger
Devin Prater
Assistant Federal Public Defenders
Office of the Federal Public Defender
100 S Charles St Twr II 9th Fl
Baltimore, MD 21201

    Re:   *United States v. Thomas Michael Mannion, Jr.*
          Criminal No. SAG-19-0466

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, **Thomas Michael Mannion, Jr.** (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **February 20, 2020**, it will be deemed withdrawn. The terms of the Agreement are as follows:

## Offenses of Conviction

1. The Defendant agrees to plead guilty to Count One *and* Count Two of the Indictment, which each charge the Defendant with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a). The Defendant admits that the Defendant is, in fact, guilty of these offenses and will so advise the Court.

## Elements of the Offense(s)

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the dates alleged in the Indictment, in the District of Maryland:

Rev. August 2018

a. The Defendant employed, used, persuaded, induced, enticed or coerced the victim to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct;

b. The victim was a minor; and

a. The visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce by any means, including by computer.

Penalties

3. The maximum penalty provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 8 U.S.C. § 2251(a) | 15 years mandatory minimum | 30 years | At least five years, up to life | $250,000 | $ 5,100 |
| 2 | 8 U.S.C. § 2251(a) | 15 years mandatory minimum | 30 years | At least five years, up to life | $250,000 | $ 5,100 |

Therefore, the total maximum term of imprisonment is sixty years (720 months) for the two offenses to which the Defendant is pleading Guilty.

    a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

    c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

2

d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

g. Sex Offender Registration: The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

h. Additional Special Assessment: In addition to the mandatory $100 special assessment, the Defendant must also pay an additional special assessment of $5,000, unless the defendant is indigent, pursuant to 18 U.S.C. § 3014.

## Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United

4

States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

### Group 1
### Count One- Victim 1
### Production of Child Pornography

  a. This Office and the Defendant further agree that the applicable base offense level, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2G2.1, is **32**.

  b. This Office and the Defendant further agree that there is a **2** level increase, because the victim had attained the age of twelve, but had not attained the age of sixteen years at the time of the offense, pursuant to U.S.S.G. § 2G2.1(b)(1)(B).

  c. This Office and the Defendant further agree that there is a **2** level increase, because the offense involved the commission of a sexual act or sexual contact, pursuant to U.S.S.G. § 2G2.1(b)(2)(A).

  d. This Office and the Defendant further agree that there is a **2** level increase, because the Defendant knowingly engaged in distribution, pursuant to U.S.S.G. § 2G2.1(b)(3).

5

e. This Office and the Defendant further agree that there is a **2** level increase because, for the purpose of producing sexually explicit material or for the purpose of transmitting such material live, the offense involved the use of a computer or interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct, or to solicit participation with a minor in sexually explicit conduct, pursuant to U.S.S.G. § 2G2.1(b)(6).

f. Group 1 subtotal: Thus, the subtotal for Group 1 is offense level is **40**.

### Group 2
### Count Two-Minor Victim 1
### Production of Child Pornography

g. This Office and the Defendant stipulate and agree that the applicable base offense level, pursuant to U.S.S.G. § 2G2.1, is **32**.

h. This Office and the Defendant further agree that there is a **2** level increase, because the victim had attained the age of twelve, but had not attained the age of sixteen years at the time of the offense, pursuant to U.S.S.G. § 2G2.1(b)(1)(B).

i. This Office and the Defendant further agree that there is a **2** level increase, because the offense involved the commission of a sexual act or sexual contact, pursuant to U.S.S.G. § 2G2.1(b)(2)(A).

j. This Office and the Defendant further agree that there is a **2** level increase because, for the purpose of producing sexually explicit material or for the purpose of transmitting such material live, the offense involved the use of a computer or interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct, or to solicit participation with a minor in sexually explicit conduct, pursuant to U.S.S.G. § 2G2.1(b)(6).

k. Group 2 Subtotal: Thus, the subtotal for Group 2 is offense level **38**.

### Group 3
### Minor Victim 2
### Production of Child Pornography

l. The parties stipulate and agree that pursuant to U.S.S.G. §1B1.2(c), the Defendant's relevant conduct set forth in the stipulated factual basis constitutes Production of Child Pornography, in violation of Title 18, United States Code, Section § 2251(a) as to Minor Victim 2.

m.  This Office and the Defendant further stipulate and agree that the applicable base offense level, pursuant to U.S.S.G. § 2G2.1, is **32**.

n.  This Office and the Defendant further agree that there is a **2** level increase, because the victim had attained the age of twelve, but had not attained the age of sixteen years at the time of the offense, pursuant to U.S.S.G. § 2G2.1(b)(1)(B).

o.  This Office and the Defendant further agree that there is a **2** level increase, because the offense involved the commission of a sexual act or sexual contact, pursuant to U.S.S.G. § 2G2.1(b)(2)(A).

p.  This Office and the Defendant further agree that there is a **2** level increase, because the Defendant knowingly engaged in distribution, pursuant to U.S.S.G. § 2G2.1(b)(3).

q.  This Office and the Defendant further agree that there is a **2** level increase because, for the purpose of producing sexually explicit material or for the purpose of transmitting such material live, the offense involved the use of a computer or interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct, or to solicit participation with a minor in sexually explicit conduct, pursuant to U.S.S.G. § 2G2.1(b)(6).

r.  Group 3 Subtotal: Thus, the subtotal for Group 3 is offense level is **40**.

s.  **Combined Offense Level:** Pursuant to U.S.S.G. §3D1.2(d) and 3D1.4, there is a **3** level increase because Groups 1-3 comprise a total of 3 units. Thus, the combined offense level is offense level **43**.

t.  **Acceptance of Responsibility:** This Office does not oppose a **2** level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1** level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

u.  **Repeat and Dangerous Sex Offender Against Minors:** This Office and the Defendant further agree that there is a **5** level increase, because the defendant engaged in a

pattern of activity involving prohibited sexual conduct, pursuant to U.S.S.G. § 4B1.5(b)(1), in that the defendant engaged in prohibited sexual conduct with the minor victims on the following chronological dates: March 9, 2019 (Minor Victim 1), April 17, 2019 (Minor Victim 2), and May 6, 2019 (Minor Victim 1).

       v.       Thus, the final adjusted offense level is **45 (43 is maximum).**

7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

9.      At the time of sentencing, this Office and the Defendant each reserve the right to advocate for a reasonable sentence, including a period of incarceration, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This office will seek a sentence of forty years (480 months), and a lifetime of supervised release. This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

10.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

       a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

       b.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of

imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

> i. The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and
>
> ii. This Office reserves the right to appeal any sentence below a statutory minimum.

   c.   The Defendant further waives any right under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned case and agrees not to file any request for documents from this Office or any investigating agency related to this criminal prosecution. The Defendant does not waive the Defendant's rights under FOIA to request documentation related to the Defendant's civil immigration proceedings, including immigration history, status, civil adjudications, etc., from the Department of Homeland Security or from the Executive Office for Immigration Review, or from any other agency dealing in matters related to civil immigration.

## Forfeiture

11.   The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

12.   Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including:

   a.   HP Pavilion G4 laptop, s/n: CNF11045RW, model: G4-1015dx; and

   b.   Samsung Galaxy J3 cell phone, model: SM-J327A, s/n: R28J432TLDM; and

   c.   Samsung Galaxy S8 Active cell phone, SM-G892A, IMEI: 357712083387349.

13.   The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding

forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

14. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

15. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Defendant's Conduct Prior to Sentencing and Breach

16. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

17. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

18. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

19. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

_____
Mary W. Setzer
Assistant United States Attorney


I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

11

2/13/20
Date

_____
Thomas Michael Mannion, Jr.

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

2/13/20
Date

_____
Katherine Newberger, Esq.
Devin Prater, Esq.

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Thomas Michael Mannion, Jr., (the "defendant") is 46 years old, and a resident of Parkville, Maryland. At all times relevant to this case, the defendant rented the basement apartment of a townhome, which he lived in alone, and was employed as a Correctional Officer at the Baltimore County Detention Center.

Minor Victim 1, a male approximately 13 years old, was a resident of Essex, Maryland. Minor Victim 2, a male approximately 14 years old, was a resident of Parkville, Maryland.

### *Minor Victim 1*

On May 6, 2019, Baltimore County Police Department received a 911 call from a complainant, who advised that he had seen a "kid" in his neighbor's backyard. The complainant was concerned due to recent burglaries in the area, so he had knocked on the front door of his neighbor's residence to advise his neighbor that he thought he saw someone enter their basement door. The minor son of the homeowner neighbor answered the door, and the complainant asked the minor whether he wanted him to check the house for him in order to see if anyone unauthorized had entered. The minor son agreed, and the complainant went downstairs and observed the defendant in bed naked with Minor Victim 1, who was also unclothed. The complainant then left the residence and called the police.

Law enforcement responded to the rear of the residence, and observed the defendant exiting the rear sliding glass door. When asked, the defendant stated that he thought the police were there because a neighbor had come into his room while he was in bed with someone. The defendant initially stated that he was inside the residence with an 18-year-old female who had left the scene before the police arrived because she was frightened that the neighbor had seen them together. Officers asked the defendant whether anyone else was inside and whether they could check the residence. The defendant consented and officers located Minor Victim 1 in the basement bedroom area. The defendant then stated that he met Minor Victim 1 a few months ago on Grindr. Grindr is a geosocial networking application that is an instrumentality of interstate and foreign commerce, and is geared toward gay and bisexual men. The defendant claimed that he had initially lied about the 18-year-old female because he was having sex with another male.

Further investigation revealed that the defendant had first picked up Minor Victim 1 in front of his residence on March 9, 2019. During the drive, the defendant put his hand down the front of Minor Victim 1's pants and began to "rub" his penis. ~~The defendant then took~~ Minor

Rev. August 2018

Victim 1's placed it on his penis while he continued to rub Minor Victim 1's penis. Once they arrived at the defendant's residence, the defendant entered Minor Victim 1 then his hand the defendant's, and the defendant opened the rear sliding glass door 's apartment through.

Inside the residence, Minor Victim 1 put on women's thong underwear and a pink one-piece lingerie that exposed his genitals and buttocks that the defendant provided to him. The defendant then got undressed and took out several sex toys, including a pink and purple dildo. The defendant told Minor Victim 1 to get on his knees on the bed and the defendant began attempting to masturbate Minor Victim 1 and licking his anus. The defendant inserted his penis partially into Minor Victim 1's anus. Minor Victim 1 began to move around because it hurt and he wanted the defendant to stop. The defendant stopped and inserted a dildo all the way into Minor Victim 1's anus and kept it there. The defendant Minor Victim 1 to perform oral sex on him, and Minor Victim 1 did. The defendant took several pictures and videos of Minor Victim 1 during the sexual encounter. The defendant also made Minor Victim 1 pose in several different positions while photographing him.

The defendant's cell phone, a Samsung Galaxy S8 Active cell phone, was later seized and forensically analyzed pursuant to a valid search warrant. Approximately twenty-one images and two videos were located on the phone, whose titles all began with "20190309" which depict the sexual contact with Minor Victim 1 that took place on March 9, 2019. All of these images and videos were taken within eight minutes of one another. In a majority of the images, Minor Victim 1 is depicted in a pink lingerie outfit and his genitals are exposed to the camera. In approximately five images and two videos, Minor Victim 1 is performing oral sex on the defendant. In five images, Victim 1 is lying on his back wearing the pink lingerie outfit with a pink object inserted into his anus, and his penis exposed.

On March 12, 2019, the defendant sent a Grindr chat to another user containing two images of child pornography of Minor Victim 1 and said the following in individual messages, "He is a virgin boi," "Could not get more then tip in him," and "Not sure he was 18 though." When asked why the defendant thought he was not 18 years old, the defendant responded, "small."

On March 17, 2019, the defendant sent a Grindr chat to another user containing multiple images of child pornography of Victim 1. The user replied, "You fuck him raw?" The defendant replied, "Condom, but only the TIP fit...The head only got in...He couldn't take anymore...I stretched him, lubed, and he just wasn't able to go full." On March 25, 2019, the defendant sent an image of child pornography of Minor Victim 1 to another user and said, "had a small black boy the other day." He then stated, "Wish it were 14 yrs old pussy, but I'll take it."

The defendant distributed child pornography images of Victim 1 on numerous additional occasions and to multiple different users of the Grindr application.

2

On May 6, 2019, the day that law enforcement were ultimately called to respond to the defendant's residence, the defendant had brought Minor Victim 1 to his residence for the second time. Once inside, the defendant provided Minor Victim 1 with a pair of pink thong underwear, a nurse outfit, a school uniform consisting of a white t-shirt, tie, and a green and red colored skirt. The defendant then undressed and had Minor Victim 1 pose for several pictures in the various outfits. The defendant began to perform oral sex on Minor Victim 1 ~~and inserted his penis into his anus, while Minor Victim 1 told the defendant "no."~~ At that point, the complainant entered the basement apartment and saw the defendant and Minor Victim 1 in bed together. After the complainant left the bedroom, the defendant ejaculated on Minor Victim 1's back and buttocks.

During the forensic analysis of the defendant's cell phone, eight images were located whose titles all began with "20190506," and which depict the ~~sexual assault~~ sexual contact with of Minor Victim 1 that took place on May 6, 2019. These images were each taken within nine minutes of each other. In the first three images, Minor Victim 1 is depicted wearing a school girl outfit. In another three images, Minor Victim 1's penis and anus are depicted. In two of the three images, the defendant's hand is touching the buttocks of the Minor Victim 1. In the last two images, the defendant's penis is near Minor Victim 1's buttocks and seminal fluid is observed on his back and buttocks.

### *Minor Victim 2*

The defendant communicated with Minor Victim 2 via both the Grindr and the Snapchat application. Snapchat is a messaging application for mobile devices, which is an instrumentality of interstate and foreign commerce, and allows the user to share moments with photos, videos, and text.

While communicating on Snapchat, the defendant asked Minor Victim 2 to send him photographs of his penis, and a video of Minor Victim 2 taking off his clothes while touching himself. Minor Victim 2 advised the defendant that he was 14 years old.

On April 17, 2019, the defendant went to Minor Victim 2's residence, after Minor Victim 2 had provided the defendant with directions. The defendant parked his vehicle on another street, and approached the residence from the back. Once inside Minor Victim 2's residence, the defendant went into Minor Victim 2's bedroom, while Minor Victim 2 went into the bathroom. When Minor Victim 2 came out of the bathroom and went back into his bedroom, the defendant had already unclothed. The defendant ~~forced~~ had Minor Victim 2 ~~to~~ touch his penis and to perform oral sex on him. The defendant then engaged in anal sexual intercourse with Minor Victim 2. ~~Minor Victim 2 then asked the defendant to stop and told him to leave.~~ The defendant took photographs and videotaped various parts of the sexual ~~assault of~~ conduct with Minor Victim 2.



Thereafter, the defendant distributed the child pornography images of Victim 2 to multiple other users through the Grindr application.

3



The forensic analysis of the defendant's Samsung Galaxy S8 Active cell phone revealed that the cell phone contained the child pornography images of Minor Victim 2 within the gallery section of the phone. The phone contained eighteen images and two videos, which depict the sexual conduct with Victim 2 by the defendant on April 17, 2019. The metadata for these images and videos confirms that they were taken on this cell phone on April 17, 2019. Four of the images depict Minor Victim 2 performing oral sex on the defendant. Seven images and two videos depict the defendant performing anal sex on Minor Victim 2. Several additional images depict touching and masturbation, both by the defendant and Minor Victim 2.

### *The defendant's other Child Exploitation & Child Pornography*

The defendant's cell phone also contained photo folders with the following labels, "0-6 girls sex," "BABIES – TODDLERS," "Cp zoo," and 10 folders labelled, "Cp" with a number 1-10 following "Cp."

The phone contained clothed photographs of the defendant's landlord's 10 year old daughter, which were taken by the defendant without her knowledge or consent. The defendant also discussed a sexual interest in this minor female within various Grindr messages. On March 6, 2019, the defendant sent a Grindr message stating, "I'd love the littles in the house, my son would be great." The following message exchange occurred between the defendant and another Grindr user on March 25, 2019:

> Defendant: I'd l 8k ve ti get my landladies girl or boy, they are almost at that curious age
> User: Nice
> Defendant: Her panties are the sweetest
> User: Mmm nice got any pics of her
> Defendant: [sends a photograph that is unrecoverable]
> User: Hot how old
> Defendant: 10
> Defendant: So cute
> Defendant: Hope she gets curious soon
> Defendant: Would love to see more of her too
> User: Yea would be nice
> Defendant: She couldn't take my cock but would love to have her suck me as I ate her.

The defendant repeatedly discussed a sexual interest in his ex-stepdaughter, who was a minor at the time, stating that he had stolen "nudes" from her phone and put them on his phone. When discussing girls' and women's panties with a user, the defendant stated, "I use to use my step daughter's before the separation."

4

The defendant attempted to meet with several other minors with whom he communicated with on Grindr. When the minors advised the defendant of their age, the defendant persisted in his attempts to meet with them for sex. On April 13, 2019, the defendant stated to a minor Grindr user, "Daddy loves younger boys." The other user replied, stating that he was 14 years old, and asked the defendant if he cared. The defendant replied, "no" and then stated, "pics." The minor user then sent the defendant a photo of an exposed in anus. The defendant replied by sending the user three images of child pornography of Victim 1.

The defendant also possessed multiple images of child pornography on his HP Pavilion G4 laptop, which was seized upon his arrest and analyzed pursuant to a valid search warrant.

The defendant admits that he employed, used, persuaded, induced, enticed or coerced Minor Victim 1 and Minor Victim 2 to take part in sexually explicit conduct for the purpose of producing visual depictions of such conduct, and that the visual depictions were produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce by any means, including by computer.

SO STIPULATED:

_____
Mary W. Setzer
Assistant United States Attorney

2/13/20
Date

_____
Thomas Michael Mannion, Jr.
Defendant

2/13/20
Date

_____
Katherine Newberger, Esq.
Devin Prater, Esq.
Counsel for Defendant

5.